1  Gretchen L. Lowe, DC Bar No. 421995
   glowe@cftc.gov
2  Kevin K. Batteh, DC Bar No. 482021075
   kbatteh@cftc.gov
3  Commodity Futures Trading Commission
4  1155 21st St. N.W.
   Washington, D.C. 20581
5  Telephone (202) 418-5636
   Facsimile (202) 418-5531
6
7  Attorneys for Plaintiff Commodity Futures Trading Commission

8              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
9              SAN FRANCISCO DIVISION

10 ─────────────────────────────────────

11 UNITED STATES COMMODITY FUTURES          )
   TRADING COMMISSION,                      )
12                                          )
                  Plaintiff,                )
13                                          )
                                            )
14            vs.                           )
                                            )  Case No. CV 09-2555MMC
15 SNC ASSET MANAGEMENT, INC., SNC          )
   INVESTMENTS, INC., PETER SON and         )  CONSENT ORDER OF
16 JIN K. CHUNG,                            )  PERMANENT INJUNCTION AND
                                            )  OTHER EQUITABLE RELIEF
17                Defendants,               )  AGAINST DEFENDANTS
                                            )   SNC ASSET MANAGEMENT, INC.,
18 and,                                     )  SNC INVESTMENTS, INC.,
                                            )  AND PETER SON.
19 ANN LEE,                                 )
                                            )
20                                          )
                  Relief Defendant.         )
21 ─────────────────────────────────────   )

22

23

24

25

26

27

28 Consent Order Of Permanent Injunction and        Case No. CV 09-2555MMC
   Other Relief

I.

<u>INTRODUCTION</u>

On June 9, 2009, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a civil enforcement action against Defendants SNC Asset Management, Inc. ("SNC Asset"), SNC Investments, Inc. ("SNC Investments"), Peter Son ("Son") and Jin K. Chung ("Chung"), seeking injunctive and other equitable relief, and the imposition of restitution and civil monetary penalties, for violations of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), § 13102-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1 *et seq.* (2009).  (See, Complaint for Permanent Injunction, Civil Monetary Penalties and Other Equitable Relief ("Complaint") (DE# 1)).  The Complaint also named Defendant Son's wife, Ann Lee ("Lee"), as a Relief Defendant, seeking disgorgement of the ill gotten gains she received from her husband.

On June 10, 2009, this Court entered a Statutory Restraining Order ("SRO") and Order for Other Equitable Relief prohibiting the transfer, dissipation or disposal of Defendants' and Relief Defendant's assets, ordering an accounting of Defendants' and Relief Defendant's assets, prohibiting the destruction of documents, permitting the Commission access to all of Defendants' and Relief Defendant's books and records, and authorizing expedited discovery. (DE# 10).

Consent Order Of Permanent Injunction and                Case No. CV 09-2555MMC
Other Relief

On June 19, 2009, this Court entered an Order of Preliminary Injunction and Other Equitable Relief, prohibiting further violations of the Act by Defendants SNC Asset, SNC Investments, and Son, and continuing the provisions of the SRO against those Defendants and Relief Defendant (DE# 21).

II.

CONSENTS AND AGREEMENTS

1.      To effect settlement of the matters alleged in the Complaint, without a trial on the merits or any further judicial proceedings, Defendants SNC Asset, SNC Investments, Son and Relief Defendant Ann Lee consent to the entry of this *Consent Order of Permanent Injunction and Other Relief Against Defendants SNC Asset Management, Inc., SNC Investments, Inc., Peter Son and Order of Disgorgement as to Relief Defendant Ann Lee* ("Order").

2.      Defendants SNC Asset, SNC Investments, and Son admit that this Court has jurisdiction over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  Relief Defendant Lee admits that, as a relief defendant, no separate subject matter jurisdiction need be asserted over her. *See, e.g., CFTC v. Kimberlynn Creek Ranch*, 276 F.3d  187, 191 (4th Cir. 2002).

3.      Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C.

Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

3

§ 13a-1 (2006), in that certain of the acts and practices alleged in the Complaint occurred in this District.

4.     In addition, Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, waive: (a) any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2010), relating to or arising from this action; (b) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

5.     By consenting to the entry of this Order, Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee admit to all of the findings of fact and conclusions of law made in this Order and all the allegations contained in the Complaint. Further, Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, agree that the allegations of the Complaint and all of the findings of fact and conclusions of law made by this Court and contained in Part III of this Order shall be taken as true and correct and be given preclusive effect, without further proof, for the purpose of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside of the United States, or to enforce the terms of this Order.  Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, also shall provide immediate notice of any bankruptcy filed by, on behalf of,

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

4

or against them in the manner required by Part VI, paragraph 4 of this Order.

6.      Defendants SNC Asset, SNC Investments and Son agree that the Court shall order the payment of restitution, disgorgement, and civil monetary penalties pursuant to the Act. The Relief Defendant Lee agrees that the Court shall order disgorgement pursuant to the Act. The parties further agree that prejudgment interest shall be due on both the civil monetary penalties and the restitution amounts.

7.      The parties agree that unless they file a consent order specifying that restitution, civil monetary penalties, and disgorgement has been satisfied or stating the amount of restitution, civil monetary penalties, and disgorgement to be paid by Defendants and Relief Defendant within ninety (90) days of this order, the amount of restitution, civil monetary penalties, and disgorgement will be determined by this Court upon motion of the Commission, and the Defendants and Relief Defendant further agree that in connection with the Commission's motion for restitution, civil monetary penalties, and disgorgement and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that Defendant did not violate the federal laws as alleged in the Complaint and found in this Order; (b) Defendants may not challenge the validity of their consents and agreements herein or this Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the findings of fact and conclusions of law in this Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for

Consent Order Of Permanent Injunction and                     Case No. CV 09-2555MMC
Other Relief

restitution and disgorgement the parties may take discovery, including discovery from appropriate non-parties.

8.     Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Order or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants' and Relief Defendant's (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, shall take all necessary steps to ensure that all of their agents and employees under their authority or control understand and comply with this agreement.

9.     Acknowledge that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based upon the entry of the injunction in this action, Defendants SNC Asset, SNC Investment, and Son understand that they shall not be permitted to contest either the factual allegations of the Complaint or the findings of fact and

Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

conclusions of law in this Order.

10. Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, agree that they have read this Order and agree to this Order voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

11. Defendants SNC Asset, SNC Investments, Son, and Relief Defendant Lee, consent to the continued jurisdiction of this Court in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Order.

12. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

III.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FINDINGS OF FACT**

A. Solicitation of Customers

Consent Order Of Permanent Injunction and                        Case No. CV 09-2555MMC
Other Relief

7

1.     From at least 2000 through the present (the "relevant period"), the Defendants solicited the retail public to trade off exchange foreign currency contracts ("forex") through managed or pooled accounts.

2.     Defendants SNC Asset and SNC Investments engaged in a common scheme to solicit customers to trade forex with or through SNC.  SNC Asset and SNC Investments share offices, telephone numbers, web sites and solicitation materials.  Son is the CEO of SNC Asset and SNC Investments, and Chung is the CFO of SNC Asset and the former CFO of SNC Investments.  SNC Asset and SNC Investments also have other common employees, agents or officers.  SNC customers often did not know the difference between the two companies.

3.     During the relevant period, the Defendants solicited at least $85 million from at least 500 customers.  Some, if not all, of the Defendants' customers are retail customers, with assets of $5 million or less, who reside primarily in California or Korea.  Defendants primarily solicited prospective customers who were part of the Korean community of the San Francisco Bay Area in which Son lived and worked.

4.     Over the thirteen month period of late October 2007 through October 2008, the Defendants solicited approximately $22 million, and since mid-June 2008 alone, the Defendants solicited at least $6,500,000 from customers.

5.     The Defendants, directly and through officers, employees and agents, solicited prospective customers through direct solicitations as well as through a website, brochures, and word-of-mouth.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

6.      In their solicitations, the Defendants falsely claimed that SNC Asset and SNC Investments were leading and successful forex trading firms and guaranteed monthly returns generated by the Defendants' successful trading.

7.      In soliciting prospective customers, the Defendants provided promotional materials that included specific materials about SNC Investments to convince the prospective customers to trade forex with SNC.  In June 2008, at least one SNC customer received promotional materials which included what appears to be a Business week article (but is actually an advertisement), claiming that SNC Investments is "one of the leading Forex broker-dealers in the industry," and that "[t]hrough its online trading platform, SNC Investments, Inc. is bringing the potential of the Forex market to the personal investor while providing services that exceed its customers' expectations."  The promotional materials also provided contact information for SNC Investments, and direct customers to a website, www.sncfx.com.

8.      The promotional materials also included, on SNC Asset letterhead, yearly earnings rates for "SNC Inc." in excess of 50% for years 2004 through 2007, and 11.26% through March 2008.  They also provided positive monthly earning rates for "SNC Inc." every month from January 2004 through March 2008.  Defendants also provided potential SNC Asset customers with SNC Investments promotional materials suggesting that Son had led SNC Investments to prominence in the foreign currency markets.  The brochures emphasized SNC Investments "risk management" and commitment to "high ethical standards," and that SNC Investments was "staffed with a group of highly-qualified industry experts."  These representations created the false impression that Son led a successful foreign

Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

9

currency trading firm in addition to SNC Asset such that investors could rely on SNC Investments and Son's purported foreign currency trading expertise.  As Defendant Son knew, however, SNC Investments was actually a small firm that lost money in its own proprietary trading account and was not handling foreign currency trading for SNC Asset.

9.     The Defendants made these representations even though since December 2007, SNC Investments repeatedly represented to the National Futures Association ("NFA")[1] that it had ceased being a forex dealer and was not accepting customer funds and, as of May 2008, NFA had filed an action against SNC Investments for failure to meet minimum capitalization requirements, general conduct violations and misleading solicitation materials.

10.     SNC Investments acted or purported to act as a counterparty to each forex transaction entered into by its customers.

11.     Many customers received and signed a SNC Asset customer agreement in which SNC Asset agreed to accept customers to open and maintain accounts for trading forex.

12.     The SNC Asset customer agreement stated that SNC Asset "is authorized to act as broker or agent or as principal to execute customer's [forex] orders.  SNC Asset is authorized to take the opposite position to customer orders on SNC's own account."

13.     The SNC Asset customer agreement also stated that customers are required to maintain the minimum margin required by SNC Asset and to provide additional margin as

---

[1] The NFA is a self-regulatory organization authorized by Congress with authority delegated by the Commission.

Consent Order Of Permanent Injunction and Other Relief

Case No. CV 09-2555MMC

SNC Asset deemed necessary.  Per the agreement, customers were to pay commissions of "35 percent of total transaction profits."  The forex transactions offered by SNC did not result in actual delivery within two days or otherwise create an enforceable obligation to make/take delivery in connection with SNC Asset and its customers' lines of business.

14.     Son, as CEO of SNC Asset, or Chung, as CFO of SNC Asset, signed the customer agreements on behalf of SNC Asset.

15.     The Defendants allowed prospective customers to invest either by providing checks or cash.  Customers investing via checks received promissory notes, which guaranteed a monthly return of 2.25% or more.  The promissory notes were signed either by Son, as CEO of SNC Asset, or by Chung, as CFO of SNC Asset.

16.     The Defendants instructed customers to wire money or make their checks payable to SNC Asset or "SNC."

17.     The Defendants provided customers who invested with cash with a deposit receipt and promised those cash customers a monthly return of 2.0%.  Cash customers received any purported profits or return of principal either in cash, or by checks drawn from Defendant Son's or Defendant Chung's personal checking accounts.  During the relevant period, the Defendants accepted approximately $37 million in cash from customers.

18.     The Defendants deposited customer funds into the bank account of SNC Asset.  Son and Chung controlled this account, writing checks and transferring funds from the account to pay purported investment returns and redemptions to investors, to pay sales commissions and other personal expenses related to the scheme, to pay money to Relief Defendant, and to pay for their own personal expenses.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

19.     Customers understood that their funds would be used for trading forex and that their guaranteed returns were based on the profitability of the Defendants' trading.

20.     Customers relied upon the representations and omissions made by the Defendants in their oral and written solicitations in deciding to invest, reinvest and trade with SNC Asset.

B.     <u>Defendants Issued False Statements</u>

21.     During the relevant period, the Defendants issued or caused to be issued monthly account statements to customers or provided customers with on-line access to their account statements through a website, www.sncfx.com.  The account statements and balances consistently showed profitable returns on individual accounts, characterized as dividends or interest.

22.     SNC Asset customers most recently received account statements dated September 26, 2008, which reflected positive balances and earnings.

23.     A few customers withdrew their purported dividends but left their principal investment with SNC, but the vast majority of SNC customers reinvested their purported profitable returns, as the Defendants encouraged them to do.  At times when customers considered withdrawing their investments, Son and others encouraged them to leave their funds with SNC Asset to maximize their investment.  Defendants made this representation up until just days before SNC Asset closed down in October 2008.

24.     For example, one customer initially gave SNC Asset $250,000 in December 2006 to trade forex.  In exchange, SNC Asset issued her a promissory note guaranteeing her a

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

2.25% return each month. Each month she received account statements from SNC Asset showing her promised returns.

25.     In May 2008, based on these account statements and representations from SNC Asset, she opened another account with SNC Asset, which she funded with $10,000. She made her check payable to SNC Asset and gave it directly to Chung. At that time, Chung assured her that SNC Asset was doing well and had assets of over $60 million. He also represented that SNC Asset was trading forex two to three times a month. Each month she continued to receive account statements showing her investment growing at the promised rate of 2.25% per month. In August 2008, SNC provided her with copies of bar graphs, which represented that SNC Asset had earned up to 59.40% annually during the period from 2002 through June 2008.

26.     As a result of all of the aforementioned oral and written representations by SNC Asset and its officers and employees, in September 2008, she invested another $200,000 with SNC Asset and received another promissory note. At that time, she was again reassured by an SNC Asset employee that SNC Asset was doing well. She made her additional investments after seeing the consistent profitable returns on her initial investments.

27.     As another example, in June 2008, an employee of SNC Asset solicited a prospective customer and provided solicitation materials with the purported track record of SNC Asset. Thereafter, Chung personally solicited the prospective customer at the customer's workplace. Chung reiterated that SNC Asset had a track record of earnings of more than 50% a year. The customer and his family decided to invest with SNC Asset. They initially invested $300,000, making checks payable either to "SNC" or "SNC Assets." In

Consent Order Of Permanent Injunction and        Case No. CV 09-2555MMC
Other Relief

August 2008, the customer met with Son, who represented that SNC Asset was doing well and that they used trading limits to prevent losses. The customer and his family invested an additional $140,000 in August and $260,000 more in September 2008, for a total investment of $700,000. Each month, including in September 2008, the customer received account statements showing his and his family's investments were increasing in value.

28.    SNC Asset's customers continued to believe that that the profits they were purportedly earning came from the Defendants' profitable trading of forex.

29.    Customers relied on the monthly account statements in deciding to reinvest any purported earnings with SNC Asset, keep their principal investment with SNC Asset, or invest additional funds with SNC Asset.

C.    Defendants Misappropriated Funds to Make Returns and For Personal Uses

30.    The account statements provided by the Defendants concealed that: The Defendants at best traded only a small percentage of the approximately $85 million of customer funds solicited and received; the overall limited trading by Defendants was unprofitable; and Defendants were misappropriating customer funds to pay purported earnings or return principal to existing customers, to funnel funds to others, including the Relief Defendant, and to pay for personal expenses and uses. Defendants did not disclose these uses of funds to customers or prospective customers. The purported investment returns paid to some investors were not paid from foreign currency trading profits as some investors were led to believe. Rather, the checks were funded in part with other investors' money. Son and Chung directed the monthly check mailings and one of them signed each check.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

31.     Since the end of 2003, the Defendants did not conduct any trading in accounts held in the name of, or controlled or managed by, SNC Asset.  Any known prior trading conducted by SNC Asset was unprofitable.

32.     From at least October 2007 through October 2008, SNC Asset received approximately $22 million from customers, and virtually none of those funds was transferred into any apparent trading accounts or used for trading.

33.     From March 2003 through October 2008, trading in known accounts maintained at Futures Commission Merchants ("FCM")[2] registered with the CFTC and held in the name of or controlled or managed by SNC Investments resulted in overall losses.  The total amount deposited into those accounts was only approximately $1,800,000.   Other known trading accounts held by SNC Investments in overseas trading accounts appear to have been funded with less than $6 million.

34.     Bank records from October 2007 through October 2008 indicate that, rather than trading forex with customer funds, Defendants misappropriated funds to pay back purported profits or principal to customers, to funnel funds to other persons, and for personal expenses and items, such as mortgage payments, country club dues, and homeowner dues.

---

[2] FCM are defined as those who are engaged in "soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."  Section 1a(20) of the Act, 7 U.S.C. § 1a(20).

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

35.     Defendant Peter Son's wife, Relief Defendant Lee, received monthly payments of over $3,000 per month from SNC Asset, but provided no legitimate services to SNC and otherwise did not have any legitimate entitlement to customer funds.

36.     Defendants also misappropriated customer funds invested with SNC Asset by transferring those funds to SNC Investments in an attempt to have SNC Investments comply with NFA and CFTC capitalization requirements.

37.     On or around October 29, 2008, SNC abruptly closed operations at both the California and New York Offices, and Son disappeared until the summer of 2009, when he turned himself in to the FBI in Oakland, California.  Two or three months before SNC closed its operations, Chung returned to Korea, where it is believed he remains.  Employees of SNC were notified that SNC had closed and not to come to work.

38.     Since that time, SNC's customers' funds have not been returned.

D.     <u>SNC Investments Was Undercapitalized And Failed To Notify The NFA And CFTC Of Its Undercapitalization</u>

39.     SNC Investments was registered with the Commission as a FCM.  As a registered FCM, SNC Investments was required to maintain the minimum amount of adjusted net capital required by the NFA. *See* 17 C.F.R. § 1.17(a)(1)(C) (2010), and Section 4f(b) of the Act, 7 U.S.C. 6f(b) (2006).  According to Regulation 1.17(c)(1), "net capital" means the amount by which current assets exceed liabilities.  Pursuant to Section 11 of the NFA's Financial Requirements, in November and early December 2007, the NFA required a minimum adjusted net capital of $1,000,000; on December 17, 2007, this NFA minimum adjusted net capital requirement increased to $5,000,000.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

40.     In November and December 2007, SNC Investments' net capitalization was below the adjusted net capital required by the Act and Regulation 1.17(a)(1)(C).  SNC Investments did not give immediate notice to the CFTC and NFA after it knew or should have known that it was undercapitalized.

41.     In May 2008, SNC Investments' compliance officer discovered that SNC Investments was again undercapitalized.  He did not notify the NFA or CFTC that SNC was undercapitalized as required because he was instructed by Son to not disclose this fact to the CFTC and NFA.

42.     Commission Regulation 1.12 requires that FCM's immediately notify the CFTC and the FCM's designated self-regulatory organization when the FCM's adjusted net capital falls below the required minimum.  SNC Investments' designated self-regulatory organization is the NFA.

43.     On May 29, 2008, the NFA brought a Business Conduct Committee ("BCC") action against SNC Investments for failing to maintain the required adjusted net capital and for failing to notify the NFA and CFTC of this deficiency.

44.     On September 30, 2008, the NFA issued its findings in the May 29, 2008 BCC action, determining that SNC Investments had violated NFA Rules by falling below its required minimum adjusted net capital in December 2007.

E.     Son Was A Controlling Person Of SNC And Was Acting As An Agent, Official And Employee of SNC

45.     Son is a controlling person of SNC Asset and SNC Investment.  He is the CEO of SNC Asset and SNC Investments as well as the branch manager of the California

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

17

office of SNC Asset.  He is registered with the CFTC as an associated person of SNC Investments.  Son is responsible for the operations of SNC Asset and SNC Investments and, as CEO, solicited customers and executed SNC Asset customer agreements and promissory notes.  Son also executed account opening documents for trading accounts in the name of SNC Investments, Inc.

**CONCLUSIONS OF LAW**

1.     This Court has jurisdiction over the subject matter of this action pursuant to Section 6c of the Act, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2.     Venue properly lies with this Court pursuant to Section 6c of the Act.

3.     This Court has personal jurisdiction over Defendants SNC Asset, SNC Investment, Son, and Relief Defendant Lee, who have acknowledged service of the Complaint and consented to the Court's jurisdiction.

4.     Defendants SNC Asset, SNC Investment, Son, and Relief Defendant Lee, have agreed to this Court's retention of continuing jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with this Order.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

5.      By the conduct alleged herein since at least June 18, 2008[3], Defendants cheated or defrauded or attempted to cheat or defraud other persons; issued or caused to be issued false statements; and willfully deceived or attempted to deceive other persons in connection with offering of, or entering into the margined or leveraged forex transactions alleged herein by fraudulently soliciting prospective and existing customers by making material misrepresentations and omissions, including but not limited to guaranteeing monthly profitable returns, misrepresenting that SNC Asset and SNC Investments were successful forex traders, failing to disclose SNC's trading losses, lack of trading and status of SNC Investments and SNC Asset and the operation of a Ponzi scheme, misappropriating customer funds, and making oral and written false statements or reports to customers concerning their investments, all in violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

6.      As set forth above, since at least June 18, 2008, through the present, in or in connection with margined or leveraged forex contracts, transactions or agreements made or to be made, for or on behalf of other persons, Defendants willfully made or caused to be made false reports or statements to customers or prospective customers by, among other things, knowingly providing customers fraudulent monthly account statements or balances that misrepresented the value of customers' accounts and customers' holdings, in violation of

---

[3] The Commission has jurisdiction over the Defendants' fraudulent forex business with retail customers with respect to conduct occurring on or after June 18, 2008, the date of enactment of the CRA, pursuant to Section 2(c)(2) of the Act.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

Section 4b(a)(2)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C.

§ 6b(a)(2)(B).

7.      Defendants engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

8.      Each act of fraudulent solicitation, misappropriation and false statement or report, including but not limited to those specifically described herein, is a separate and distinct violation of the Act and Regulations.

9.      In November and December 2007, and again in May 2008, SNC Investments fell below NFA's minimum net capital requirements.  By this conduct, SNC Investments violated Section 4f(b) of the Act, 7 U.S.C. § 6f(b) (2006), and Regulation 1.17(a)(1), 17 C.F.R. § 1.17(a)(1) (2009).

10.     SNC Investments knew or should have known in November and December 2007, and again in May 2008, that it had fallen below the NFA's minimum adjusted net capital requirements, but it failed to immediately notify the CFTC and the NFA (SNC Investments' designated self-regulatory organization) of this undercapitalization and, in fact, intentionally concealed this undercapitalization from the CFTC and NFA.  By this conduct, SNC Investments violated Regulation 1.12, 17 C.F.R. § 1.12 (2009).

11.     Each day SNC Investments failed to satisfy its adjusted net capitalization requirements is a separate and distinct violation of Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(1)(C), 17 C.F.R. § 1.17(a)(1)(C) (2009).

Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

12.     Each day SNC Investments failed to notify the CFTC and NFA of its undercapitalization is a separate and distinct violation of Regulation 1.12, 17 C.F.R. § 1.12 (2009).

13.     Son, directly or indirectly, controlled SNC Asset and SNC Investments and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting SNC's violations alleged in this count.  Son is thereby liable for SNC's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

14.     The foregoing acts of fraudulent solicitation, misappropriation and false statements by Son, Chung and others occurred within the scope of their employment, office or agency with SNC Asset or SNC Investments.  Therefore, SNC Asset and SNC Investments are liable for Son, Chung and others' violations of the Act and Regulations, as described in this Order, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

15.     Relief Defendant Lee received ill-gotten gains as a result of the fraud committed by Defendants to which she has no legitimate interest or entitlement, and therefore she must disgorge those funds.

16.     By reason of the foregoing, Relief Defendant Lee holds funds and assets in constructive trust for the benefit of SNC's customers.

17.     Under the totality of the circumstances, there is a reasonable likelihood of future violations of the Act by Defendants SNC Asset, SNC Investments and Son.  Therefore, a permanent injunction should be issued in this action.

Consent Order Of Permanent Injunction and                 Case No. CV 09-2555MMC
Other Relief

18.     Based upon the foregoing facts and principles of equity, there is good cause for entry of an order directing Defendants SNC Asset, SNC Investments and Son to make full restitution to the defrauded investors.

19.     Based upon the foregoing facts there is good cause for entry of an order requiring Defendants SNC Asset, SNC Investments, and Son to pay a civil monetary penalty for their violations of the Act and Regulations and for the Relief Defendant to disgorge funds received from the Defendants.

IV.

ORDER FOR PERMANENT INJUNCTION

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.     Defendants SNC Asset, SNC Investments and Son shall be permanently restrained, enjoined, and prohibited from directly or indirectly engaging in conduct which violates Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), including, but not limited to, the conduct described in the Findings of Fact and Conclusions of Law, above;

2.     Defendants SNC Investments and Son shall be permanently restrained, enjoined, and prohibited from directly or indirectly engaging in conduct which violates: Sections 4f(b) of the Act, 7 U.S.C. § 4f(b) (2006), and Regulations 1.12, and 1.17(a)(1), 17 C.F.R. §§1.12, and 1.17(a)(1) (2009), including, but not limited to, the conduct described in the Findings of Fact and Conclusions of Law, above.

3.     Defendants SNC Asset, SNC Investments and Son are  permanently restrained, enjoined, and prohibited from engaging, directly or indirectly, in:

Consent Order Of Permanent Injunction and                      Case No. CV 09-2555MMC
Other Relief

a.  trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

b.  entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and/or 2(c)(2)(C)(i) of the Act as amended by the by the CRA, to be codified in 7 U.S.C. §§ 2(c)(2)(B) and/or 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

c.  having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

d.  controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

e.  soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

f.  applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

Consent Order Of Permanent Injunction and Other Relief

Case No. CV 09-2555MMC

23

g.   acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2009)), agent or any other officer or employee of any person

registered, exempted from registration or required to be registered with the

Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §

4.14(a)(9) (2009).

4.   The injunctive provisions of this Order shall be binding on Defendants SNC Asset,

SNC Investments and Son, upon any person who acts in the capacity of an officer, agent,

servant, employee, attorney, successor and/or assign of Defendants SNC Asset, SNC

Investments and Son, and upon any person who receives actual notice of this Order by

personal service or otherwise insofar as he or she is acting in active concert or participation

with Defendants SNC Asset, SNC Investments and Son.

V.

EQUITABLE RELIEF

**IT IS FURTHER ORDERED THAT:**

1.   Defendants SNC Asset, SNC Investment, and Son shall pay restitution,

disgorgement of ill-gotten gains, and civil monetary penalties pursuant to Section 6c of the

Act, 7 U.S.C. § 13a-1 (2006); Relief Defendant Lee shall pay disgorgement of ill-gotten

gains.

2.   If the parties do not file a consent order stating that restitution, civil monetary

penalties, and disgorgement have been satisfied or specifying the amount the parties agree is

Consent Order Of Permanent Injunction and                        Case No. CV 09-2555MMC
Other Relief

full restitution, civil monetary penalties, and disgorgement within ninety (90) days after entry of this Order, this Court will schedule a hearing to determine the appropriate amounts. The Defendants SNC Asset, SNC Investment, and Son shall pay restitution to a receiver or monitor appointed by this Court until their restitution obligation is fully satisfied.

3.      In connection with the Commission's motion for restitution, civil monetary penalties, and disgorgement and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that Defendant did not violate the federal laws as alleged in the Complaint; (b) Defendant may not challenge the validity of their consents and agreements herein or this Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the findings and conclusions in this Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for restitution and disgorgement the parties may take discovery, including discovery from appropriate non-parties.

4.      Defendants SNC Asset, SNC Investments and Son, and Relief Defendant Lee, shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. As part of such cooperation, Defendants and Relief Defendant, to the full extent of their ability, will respond promptly and

Consent Order Of Permanent Injunction and           Case No. CV 09-2555MMC
Other Relief

truthfully to any inquires or requests for information including but not limited to, requests for production and authentication of documents, shall provide assistance at any trial, proceeding, or investigation, including but not limited to, requests for testimony, depositions, and/or interviews, and shall testify completely and truthfully in any such proceeding, deposition, trial, or investigation.  Should the Commission file any additional action(s) related to the subject matter of this action, Defendants SNC Asset, SNC Investments and Son, and Relief Defendant Lee, are directed to appear in the judicial district in which such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should a party to such action(s) determine that such testimony is necessary.

VI.

MISCELLANEOUS PROVISIONS

1.      If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

2.      This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with this Order.

Consent Order Of Permanent Injunction and                    Case No. CV 09-2555MMC
Other Relief

3.   All notice required to be given by any provision in this Order shall be sent by overnight mail (e.g., Federal Express) or email, as follows:

Notice to the Commission:   Gretchen Lowe
Associate Director, Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, D.C. 20581
(202) 418-5379
glowe@cftc.gov

Notice to the Defendants:   John H. Feiner, Esq.
Attorney for Defendants SNC Asset, SNC Investment,
Son and Relief Defendant Lee
One Park Plaza, Suite 600
Irvine, CA  92651
(949) 852-7345
jhfeiner@aol.com

4.   In the event that the Defendants or Relief Defendant Ann Lee changes their residential or business telephone number(s) and/or address(es) at any time, they shall provide written notice of the new number(s) and/or address(es) to the Commission within ten calendar days thereof.

Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

27

**IT IS SO ORDERED**, on the ___ day of _____, 2010.

1

2                               UNITED STATES DISTRICT JUDGE
                               NORTHERN DISTRICT OF CALIFORNIA

3

4
CONSENTED TO AND APPROVED BY:

5

6 Dated: 4/29/11

7                               Kevin K. Batteh, Chief Trial Attorney
                              Gretchen L. Lowe, Associate Director

8                               *Attorneys for Plaintiff*
                              Commodity Futures Trading Commission

9                               1155 21st Street NW
                              Washington, DC 20581

10

11 Dated: _____

12                               Peter Son, Defendant, signing individually and
                              on behalf of Defendants SNC Asset

13                               Management, Inc., and SNC Investments, Inc.

14

15 Dated: _____
                              Ann Lee, Relief Defendant

16

17 Dated: _____

18                               John H. Feiner, Esq.
                              *Attorney for Defendants SNC Asset*

19                               *Management Inc., SNC Investments, Inc.,*
                              *Peter Son and Relief Defendant Ann Lee*

20                               One Park Plaza, Suite 600
                              Irvine, CA  92651

21

22

23

24

25

26 Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
Other Relief

27

28

**IT IS SO ORDERED**, on the ___ day of _____, 2010.

_____

UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

CONSENTED TO AND APPROVED BY:

Dated: _____        _____

Kevin K. Batteh, Chief Trial Attorney
Gretchen L. Lowe, Associate Director
*Attorneys for Plaintiff*
Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581

Dated: 4/5/11        _____

Peter Son, Defendant, signing individually and
on behalf of Defendants SNC Asset
Management, Inc., and SNC Investments, Inc.

Dated: _____        _____

Ann Lee, Relief Defendant

Dated: 4/5/11        _____

John H. Feiner, Esq.
*Attorney for Defendants SNC Asset*
*Management Inc., SNC Investments, Inc.,*
*Peter Son and Relief Defendant Ann Lee*
One Park Plaza, Suite 600
Irvine, CA  92651

Consent Order Of Permanent Injunction and        Case No. CV 09-2555MMC
Other Relief

28

**IT IS SO ORDERED**, on the 13th day of ____May____, ~~2010.~~ 2011.

1

2
                              UNITED STATES DISTRICT JUDGE
3                             NORTHERN DISTRICT OF CALIFORNIA

4
  CONSENTED TO AND APPROVED BY:
5

6  Dated: _____

7                                   Kevin K. Batteh, Chief Trial Attorney
                                    Gretchen L. Lowe, Associate Director
8                                   *Attorneys for Plaintiff*
                                    Commodity Futures Trading Commission
9                                   1155 21st Street NW
                                    Washington, DC 20581
10

11 Dated: _____

12                                  Peter Son, Defendant, signing individually and
                                    on behalf of Defendants SNC Asset
13                                  Management, Inc., and SNC Investments, Inc.

14
   Dated:  4 / 15 / 2011
15
                                    Ann Lee, Relief Defendant
16

17 Dated: _____

18                                  John H. Feiner, Esq.
                                    *Attorney for Defendants SNC Asset*
19                                  *Management Inc., SNC Investments, Inc.,*
                                    *Peter Son and Relief Defendant Ann Lee*
20                                  One Park Plaza, Suite 600
                                    Irvine, CA 92651
21

22

23

24

25

26  Consent Order Of Permanent Injunction and          Case No. CV 09-2555MMC
    Other Relief
27
                                    28
28